## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CHARLES HUDSON, | ) | CASE NO. 4:17-cv-00321 |
| | ) | |
| PETITIONER, | ) | JUDGE JAMES G. CARR |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| | ) | |
| WARDEN KIMBERLY CLIPPER, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| RESPONDENT. | ) | |

On February 16, 2017, Petitioner Charles Hudson ("Petitioner" or "Hudson") filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition") asserting three grounds for relief.[1]  Doc. 1, Doc. 4.  Hudson challenges the constitutionality of his March 2011 conviction and 21½ year aggregate prison sentence for rape, kidnapping, and gross sexual imposition in *State of Ohio v. Charles Hudson*, Case No. 2009 CR 01190 (Mahoning County) following a  jury trial.  Doc. 1, p. 1, Doc.9-1, pp. 63-64.[2]

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.   Also pending before this Court is Hudson's Motion for Appointment of Expert Assistance. Doc. 11.

For the reasons set forth herein, the undersigned **DENIES** Hudson's Motion for Expert Assistance (Doc. 11) and recommends that the Court **DISMISS** Hudson's Petition (Doc. 1, Doc.

---

[1] Prior to the filing of an Answer, on March 20, 2017, Hudson filed an amendment to his Petition, adding a fourth ground for relief.  Doc. 4.

[2] Citations to the record are to ECF Doc. numbers and page numbers within the ECF Doc.

4) as barred by the statute of limitations.

## I.      Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to a judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).  The Seventh District Court of Appeals summarized the facts underlying Hudson's conviction as follows:

> {¶ 2} On October 12, 2009 between 7:00 and 7:10 a.m. a fourteen-year old female child ("M") was walking down Tremble Ave. in Campbell, Ohio, on her way to school. When M reached the intersection of Tremble and 12th St., Appellant appeared from around the corner, grabbed her arm, put a knife to her throat, and told her to be quiet or he would hurt her. (Tr. Vol.II, p. 334.)

> {¶ 3} Appellant compelled M to walk through the Sycamore Apartment parking lot to an abandoned house on 13th St. (Tr. Vol.II, p. 334.) Once inside the house on 13th St., Appellant forced her up the stairs to a bedroom on the second floor. When they reached the second floor Appellant said to M, "you already know what I want" and M asked him to let her go. (Tr. Vol.II, p. 368.)

> {¶ 4} Appellant held the knife in his hand as he forced his tongue into M's mouth, kissing her. (Tr. Vol.II, pp. 337–338.) M asked him "please stop" and asked him again to let her go. (Tr. Vol.II, p. 338.) Appellant refused and told her "be quiet, or you're gonna get hurt." (Tr. Vol.II, p. 338.) Appellant then moved M into a room, removed her shirt, and told her to lie on a blanket on the floor near a window. (Tr. Vol.II, p. 338.) Appellant removed M's pants and underwear, touched her thighs, placed the knife within his reach, and forced his penis into her vagina. (Tr. Vol. II, pp. 339–340; 342.)

> {¶ 5} When Appellant finished, he got up and left the room. M kicked the knife away from her, dressed, and ran home. When M entered her house she was crying. She attempted to tell her brother what had happened, but couldn't speak coherently. Her brother shouted for their father and M finally told her parents what happened. The family drove around the neighborhood to see if she could point out her assailant, but Appellant appeared to have left the area. When the family returned home, M showered. M's parents took her to the Campbell Police Department and reported the crime. M then went to the Child Advocacy Center where a rape kit was completed and a medical examination performed.

{¶ 6} When M gave her report to the police she told them that at some point that morning she lost her glasses. When investigators went to the abandoned house she described, her glasses were located in a second floor bedroom. (Tr. Vol.II, p. 425.) Additional items were recovered from the room including a piece of blue carpet that had bodily fluids on it, a kitchen knife, and a piece of string. The underwear M wore that morning was also retrieved. The house itself burned down a few days after the investigation. Only the photographs taken by the investigators and items recovered from the room remain. (Tr. Vol.III, pp. 471, 477.) The pictures taken of the room where additional evidence was collected include an image of the words "Bev's house" written in black marker on the windowsill. (Tr. Vol.III, p. 457.)

{¶ 7} M described the man who attacked her as an older black male, between forty and fifty-nine, with a distinctive walk, who possibly had some facial hair. (Tr. Vol.III, pp. 479–481.) The investigating officer compiled a photographic array using a computer program designed to take images from the BMV. Based on the investigator's belief that, due to M's age, she might perceive men both older and younger than the range she suggested to be in the same twenty-year range, he included men both older and younger than M indicated. (Tr. Vol.III, pp. 479–482.) The investigator included Appellant's image because of M's description of a distinctive walk. Appellant, and his distinctive walk, were known to the investigator. In addition to including Appellant in the array the officer also included the image of a Mr. Beverly who, according to the investigator, commonly went by Bev, based on the words found on the windowsill in the room where M was sexually assaulted. (Tr. Vol.III, p. 483.) M identified Appellant as the man who kidnapped and sexually assaulted her; she re-identified him from the witness stand at trial. (Tr. Vol. II, pp. 483; 343.) After identifying Appellant in the photographic array, M began to cry, but was able to confirm when asked that she was sure he was her assailant. (Tr. Vol .III, p. 484.)

{¶ 8} Appellant was apprehended the following day in a house where he and another individual were staying. When the police entered the house, the room where Appellant was found was filled with four feet of jumbled household items. Appellant had concealed himself among the items and was so wedged against furniture and covered with other items that he needed the assistance of the officers to uncover him before he could be taken into custody. (Tr. Vol.II, pp. 451–454.)

{¶ 9} Analysis of the rape kit revealed semen on the vaginal swabs. The physical examination of M revealed evidence of penetration and blunt force trauma to her genital area. The DNA recovered from the rape kit swabs was matched with Appellant's DNA. (Tr. Vol.II, pp. 417–420.) Appellant stipulated to the contents of and results drawn from the rape kit and acknowledged that his genetic material in the form of semen was collected from M's vagina, but said that the sexual encounter was consensual.

*See State v. Hudson*, 2013-Ohio-5529, ¶¶ 2-9, 2013 WL 6672424, **1-2 (Ohio App. Dec. 9, 2013); Doc. 9-1, pp. 155-158, ¶¶ 2-9.

## II.    Procedural Background

### A.    State conviction and sentencing

In November 2009, a Mahoning County Grand Jury indicted Hudson on one count of rape in violation of O.R.C. § 2907.02(A)(2)(B), a first degree felony, (Count 1); two counts of kidnapping in violation of O.R.C. §§ 2905.01(A)(4)(C) and 2905.01(A)(2)(C), first degree felonies, (Count 2 and Count 3); and one count of gross sexual imposition in violation of O.R.C. § 2907.05(A)(1)(C), a fourth degree felony, (Count 4).  At his arraignment on November 24, 2009, Hudson entered a plea of not guilty.  Doc. 9-1, p. 6.

On December 11, 2009, Hudson waived his right to a speedy trial; a pretrial was held; further motion practice and discovery was to be conducted; and the trial scheduled for December 14, 2009, was continued.  Doc. 9-1, pp. 7-8.

On January 15, 2010, Hudson's case was called for a pretrial.  Doc. 9-1, p. 9.  Upon Hudson's counsel's motion to continue trial due to defense counsel's unavailability, the trial was reset to March 22, 2010, and a pretrial was set for February 25, 2010.  Doc. 9-1, p. 9.  On February 25, 2010, upon request of the defense, the trial was continued to June 7, 2010, and a pretrial was scheduled for May 26, 2010.  Doc. 9-1, p. 10.   Upon motion of the defense, the May 26, 2010, pretrial was later rescheduled to June 3, 2010.  Doc. 9-1, p. 11.  At the June 3, 2010, pretrial, the trial was continued to allow the State sufficient time to have DNA testing performed.  Doc. 9-1, p. 12.  The pretrial was continued to September 3, 2010.  Doc. 9-1, p. 12.

On July 9, 2010, Hudson sent a letter to the Clerk of Court of the Mahoning County Common Pleas Court indicating that he had discharged his attorney, Thomas E. Zena, as of July

5, 2010, and he requested an immediate court date.  Doc. 9-1, pp. 13, 254.  On August 4, 2010, Attorney Zena filed a motion to withdraw.  Doc. 9-1, p. 254.  On August 10, 2010, the trial court sustained Attorney Zena's motion to withdraw as counsel and appointed Attorney Ronald Knickerbocker to represent Hudson.  Doc. 9-1, p. 254.

On September 3, 2010, a pretrial was held.  Doc. 9-1, p. 14.  The trial court sua sponte continued the matter and reset it for further pretrial on November 3, 2010, and scheduled the jury trial for November 8, 2010.  Doc. 9-1, p. 14.  In its order, the court referred to Hudson's December 11, 2009, speedy trial waiver.  Doc. 9-1, p. 14.  Attorney Knickerbocker filed a motion to withdraw as counsel on September 15, 2010.  Doc. 9-1, p. 255.  The court granted Attorney Knickebocker's motion to withdraw, noting that the court had been advised that Attorney Fernando Mack had been retained as counsel for Hudson.  Doc. 9-1, pp. 15, 255.  The pretrial remained scheduled for November 3, 2010, and the trial remained scheduled for November 8, 2010.  Doc. 9-1, pp. 15, 255.

On October 15, 2010, Hudson, through counsel, filed a Motion to Suppress due to an alleged violation of Hudson's speedy trial rights.  Doc. 9-1, pp. 16-23.  Hudson argued that the amount of time that had elapsed and his prior counsel's requests for continuances were unreasonable.  Doc. 9-1, p. 16.  Hudson contended that, contrary to what was reflected on the docket, he was not present in court when his speedy trial rights were waived on December 11, 2009; he did not sign a speedy trial waiver; and he instructed his counsel not to waive his speedy trial rights.  Doc. 9-1, p. 17, n. 1.  On November 1, 2010, Hudson, through counsel, also filed a Motion to Suppress Witness Identification, seeking to suppress any out of court and any in court identification testimony.  Doc. 9-1, pp. 24-33.  The State filed a memorandum in response to Hudson's motion to dismiss.  Doc. 9-1, pp. 39-59.  Following a hearing on December 15, 2010,

the trial court overruled Hudson's motion to dismiss and motion to suppress witness identification.[3]  Doc. 9-1, p. 60.

In the interim, on November 3, 2010, a letter from Hudson, bearing the date of April 15, 2010, was filed with the court.  Doc. 9-1, p. 34.  In that letter, Hudson objected to the speedy trial waiver and demanded a trial within a reasonable time.  Doc. 9-1, p. 34.  Also, on November 3, 2010, a pretrial was held.  Doc. 9-1, p. 35.  By agreement of the parties, the jury trial set for November 8, 2010, was continued to February 28, 2011,[4] with a further pretrial scheduled for December 15, 2010.  Doc. 9-1, p. 35.

On December 3, 2010, Hudson, through counsel, filed a motion to suppress oral statements.  Doc. 9-1, pp. 36-38.  The State filed a memorandum in opposition on December 28, 2010.  Doc. 9-1, p. 256.  A suppression hearing was scheduled for February 11, 2011.  Doc. 9-1, p. 257.  Defendant filed a motion to continue the hearing, which was granted.  Doc. 9-1, p. 61.  By agreement of the parties, the hearing was continued to February 14, 2011.  Doc. 9-1, p. 61.  Following the hearing, the trial court overruled the motion to suppress.  Doc. 9-1, p. 62.

The jury trial commenced on February 28, 2011.  Doc. 10, p. 3.  On March 3, 2011, the jury returned guilty verdicts for rape (Count 1), two counts of kidnapping (Count 2 and Count 3), and gross sexual imposition (Count 4).  Doc. 9-1, pp. 63, 257-258.  On April 19, 2011,[5] the trial court sentenced Hudson to 10 years in prison for rape (Count 1); 10 years in prison for kidnapping (Count 2); 10 years in prison for kidnapping (Count 3); and 18 months in prison for gross sexual imposition (Count 4).  Doc. 9-1, pp. 63-64.  The trial court merged Counts 2 and 3

---

[3] The judgment entry was signed on December 16, 2010, and docketed on December 20, 2010.  Doc. 9-1, p. 60.

[4] The judgment entry from the November 3, 2010, pretrial reflects that February 26, 2011, was the next available trial date for the court and all parties.  Doc. 9-1, p. 35.

[5] The sentencing entry was docketed on April 22, 2011.  Doc. 9-1, p. 63.

with each other and ran all counts consecutive with each other for a total aggregate prison sentence of 21½ years.  Doc. 9-1, p. 63.

**B.**     **Direct appeal**

On May 13, 2011, Hudson, through counsel, filed a notice of appeal to the Seventh District Court of Appeals.  Doc. 9-1, p. 65.  On January 17, 2012, Hudson's counsel filed Appellant's Assignments of Error and Merit Brief.[6]  Doc. 9-1, pp. 66-105.  In his appellate brief, Hudson raised the following four assignments of error:

> 1.  Mr. Hudson was denied due process of law and his right to a speedy trial was violated when he was not brought to trial in a timely manner.
>
> 2.  The trial court failed to treat the gross sexual imposition, rape and kidnapping convictions as allied offenses of similar import and merge them at the sentencing hearing.
>
> 3.  The trial court erred in failing to suppress the results of the unduly suggestive photo array.
>
> 4.  Appellant's convictions for rape, gross sexual imposition and kidnapping are against the manifest weight of the evidence.

Doc. 9-1, pp. 67-68.  The State of Ohio filed its appellate brief on May 16, 2012.  Doc. 9-1, pp. 106-145.  On June 20, 2012, Hudson filed his reply brief.  Doc. 9-1, pp. 146-153.  On December 9, 2013, the Seventh District Court of Appeals overruled Hudson's assignments of error and affirmed the judgment of the trial court.  Doc. 9-1, pp. 154-186.  Hudson did not file a timely appeal with the Supreme Court of Ohio.

---

[6] The notice of appeal was filed by appellate counsel whom was appointed on May 11, 2011.  Doc. 9-1, p. 65. Hudson's prior trial counsel filed Appellant's Assignments of Error and Merit Brief.  Doc. 9-1, p. 66.

**C.      Motion for leave to file delayed appeal in the Supreme Court of Ohio**

On June 17, 2016, Hudson, acting *pro se*, filed a notice of appeal (Doc. 9-1, pp. 187-189) and a motion for leave to file a delayed appeal in the Supreme Court of Ohio (Doc. 9-1, pp. 190-239).

In his motion for leave to file a delayed appeal, Hudson acknowledged that his counsel in his direct appeal advised him on January 10, 2014, that the court of appeals had affirmed his conviction on December 9, 2013.  Doc. 9-1, p. 226.  At that time, Hudson terminated his direct appeal counsel because he believed that he had been ineffective by not raising winning issues in the court of appeals.  Doc. 9-1, p. 226.  Thereafter, at Hudson's request, Hudson's brother retained new counsel to represent Hudson in the Supreme Court of Ohio or possibly in the court of appeals with respect to an App. R. 26(B) application.  Doc. 9-1, p. 226.  Hudson further indicated that his new appellate counsel, Jana Deloach, notified him via telephone that she had filed a notice of appeal with the Supreme Court of Ohio on January 24, 2014.  Doc. 9-1, p. 226. In a letter Hudson sent to the Supreme Court of Ohio, stamped May 13, 2015, Hudson relayed that Attorney Deloach had informed him that she had been suspended from the practice of law and that he was searching for a new attorney and he requested information regarding the status of his appeal.  Doc. 9-1, pp. 228, 231.  Hudson stated that he received a letter from the clerk's office of the Supreme Court of Ohio, dated May 15, 2015, which stated that Attorney Deloach had not filed anything on his behalf.  Doc. 9-1, pp. 226, 228, 232.  Hudson stated that he thereafter filed an application for delayed reopening in the Seventh District Court of Appeals. Doc. 9-1, pp. 226, 228, 233-237.  He also stated he had received a *pro se* packet from the Ohio

Public Defender's Office, dated April 19, 2016, regarding how to file a delayed appeal with the Supreme Court of Ohio.  Doc. 9-1, p. 226.

On August 31, 2016, the Supreme Court of Ohio denied Hudson's motion for a delayed appeal and dismissed the matter.  Doc. 9-1, p. 240.

**D.  Delayed application for reopening direct appeal**

Prior to filing his motion for delayed appeal in the Supreme Court of Ohio, on November 24, 2015, Hudson, acting *pro se*, filed a delayed application for reopening pursuant to App. R. 26(B) in the Seventh District Court of Appeals.  Doc. 9-1, pp. 241-245.  Hudson argued that his appellate counsel's "inadequate performance compromised the appeal."  Doc. 9-1, p. 241. Hudson asserted that he had good cause for the untimely filing of his App. R. 26(B) application. Doc. 9-1, pp. 242-243.  He argued Attorney Deloach failed to file the necessary paperwork for his appeal and failed to arrange for another attorney to handle her appeal.  Doc. 9-1, p. 243. Hudson also argued that his appellate counsel failed to raise winning issues.  Doc. 9-1, p. 244.

On June 29, 2016, the Seventh District Court of Appeals denied Hudson's App. R. 26(B) application.  Doc. 9-1, pp. 246-248, 267.  Hudson conceded and the court of appeals found that Hudson's application was untimely.[7]  Doc. 9-1, p. 247.  Further, the court of appeals concluded that Hudson had failed to demonstrate good cause for not timely filing his application, finding that, "[s]imple attorney neglect is not a reason for excusing a litigant's failure to comply with time requirements."  Doc. 9-1, pp. 247-248 (internal citations omitted).  Finally, the court of appeals found that, even if the application was considered, there was no basis for granting the

_____

[7] Absent a showing of good cause, App. R. 26(B) requires a defendant to file his application for reopening an appeal based on a claim of ineffective assistance of appellate counsel within 90 days from journalization of the appellate judgment. *See* App. R. 26(B).  Hudson's judgment affirming his conviction and sentence was journalized on December 9, 2013.  Doc. 9-1, p. 154.  His App. R. 26(B) application was not filed until November 24, 2015.  Doc. 9-1, p. 241

application because Hudson only argued that his counsel did not present any winning issues and failed to file a further appeal; he presented no assignments of error, which was a requirement of App. R. 26(B).  Doc. 9-1, p. 248.

Hudson did not file an appeal from the Seventh District Court of Appeals' June 29, 2016, opinion and judgment entry.

## E.    Federal habeas corpus petition

On February 16, 2017, Hudson, acting *pro se*, filed his federal habeas corpus petition. Doc. 1.  In his Petition, Hudson certified that he placed his Petition in the prison mailing system on February 14, 2017.  Doc. 1, p. 37.  "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)). Thus, Hudson's Petition is deemed filed as of February 14, 2017.

In his Petition, Hudson raised three grounds for relief.  Doc. 1.  Prior to the filing of an Answer, on March 20, 2017, Hudson filed an amendment to his Petition, adding a fourth ground for relief.  Doc. 4.  Hudson's grounds for relief are as follows:

> **GROUND ONE**:  The trial court violated the Defendant's constitutional right to a speedy trial.
>
> **Supporting facts**: The record will show that Mr. Hudson was detained without being brought to trial at all from 2009 thru 2011; that repeated letters were written to the trial judge, by Mr. Hudson, expressing his desire of a speedy trial and his not wanting to wave that right; that upon his discovery that a waiver of speedy trial had been presented to the court and had his name forged on it, Mr. Hudson made the trial judge aware that he had no knowledge of the waiver and had not signed the document; that the trial court made no proper inquiry in determining the validity of the signature on the document, though admitting the uncertainty of the court as to whether it was Mr. Hudson or not; Mr. Hudson will prove he did not sign or have a knowledge of the document and therefore prove the waiver to be illegal and its acceptance by the court in violation of his rights.

10

**GROUND TWO**: The Court erred and prejudiced the defendant in violation of his constitutional rights by accepting the fraudulent waiver of speedy trial without performing proper inquiry.

**Supporting facts**: The record will show that Mr. Hudson, both, through repeated correspondence and at the time of his personal appearance before the judge, denied any knowledge of a waiver and had not agreed to or signed the document; that the trial judge failed to comply with the guidelines set forth to follow in said situation; that the trial judge admitted the court's uncertainty of the signature on the waiver of speedy trial document; that Charles Hudson denied in open court to having any knowledge of the document and denied having signed or approved of any signing of the document; that a hearing on the issue was set for a later date but was never held; that the actions of the court in this regard prejudiced Mr. Hudson and violated his constitutional rights.

**GROUND THREE**: The trial court erred and violated the Defendant's constitutional rights by not holding a hearing where a conflict of interest existed from defendant's denial of having signed or having approved signing of waiver.

**Supporting facts**: The record will show that Mr. Hudson wrote correspondences to the court requesting his speedy trial rights; that he brought to the attention of the court that he had no knowledge of a waiver of his speedy trial; that he denied having signed said document and never gave his approval of the waiver of speedy trial; that the court ruled on his motion in the absence of any proper hearing and without permitting defense attorney to present mitigating evidence.

**GROUND FOUR**:  Ineffective assistance of counsel.

**Supporting facts**: The record will show that, if not for the ineffective assistance of petitioner's counsel, the petitioner's direct appeal in the Seventh District Court of Appeals, there was an immense probability of a different outcome.  The record will show the petitioner's counsel failed to file a timely 26(B) post-conviction motion with the Seventh District Court of Appeals, followed by a failure to file a timely appeal with the Ohio Supreme Court, in which counsel was paid to do.  Mr. Hudson filed a complaint against his attorney with the Supreme Court of Ohio Lawyers Fund for client protection for ineffective assistance of counsel and for keeping money for work not performed.  The lawyer's fund board of commissioners ruled in his favor; see exhibit "C."  The ineffective assistance of counsel started with attorney Thomas Zena.  The record will show Mr. Zena turned in the fraudulent waiver of speedy trial that the trial court accepted.  The trial courts acceptance of that waiver, a waiver of a guaranteed constitutional right, did not comply with Federal law requirements necessary for accepting the waiver of any guaranteed constitutional right.  Since Mr. Hudson was not physically present in open court when the waiver was accepted, the trial court violated State and Federal law. United States Supreme Court ruling: The defendant needs to be present during any critical stage of the trial. *Gerstein v. Pugh* (1975), 420 U.S. 103, 122 held that a

critical stage are those "pretrial procedures that would impair a defense on the merits. The defendant should be present unless he waives his right or it is conducted through a video. (see exhibit "J").

The record will show the trial court received a letter July 9, 2010 from Mr. Hudson, which he stated that attorney Thomas Zena is terminated upon receipt of this letter and his continuances are no longer needed in his case. He then asked the court for a hearing under the statute of section 2937.21 of the Ohio Revised Code, which states that no more continuances over ten days. (see exhibit "F") The letter is a clear manifestation of his wish for an immediate jury trial and represents a clear revocation of the open ended waiver of speedy trial formerly filed with the trial court by attorney Zena. The trial court and any other court must follow Federal requirements and meet safety guidelines before accepting the waiver of any guaranteed constitutional right. In the trial courts failure to do this, makes the waiver of speedy trial invalid, thus violating his due process of law.

Doc. 1, pp. 6, 8-9, Doc. 4, pp. 1-2.

### III. Law and Analysis

Respondent argues that Hudson's Petition should be dismissed because it is barred by the statute of limitations. Alternatively, Respondent argues that Hudson procedurally defaulted his grounds for relief and/or his grounds for relief are without merit.

### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling AEDPA provision states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

12

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**B.     AEDPA statute of limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**C.     Hudson's petition should be dismissed as barred by AEDPA's statute of limitations**

Under 28 U.S.C. § 2244(d)(1)(A), the AEDPA statute of limitations starts to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of

the time for seeking such review."[8]  28 U.S.C. § 2244(d)(1)(A).

On December 9, 2013, the court of appeals issued its decision overruling Hudson's assignments of error and affirming the judgment of the trial court.  Doc. 9-1, pp. 154-186. Hudson had 45 days to appeal that decision to the Supreme Court of Ohio but did not file an appeal within that time period.  *See* S.Ct.Prac.R. 7.01 (notice of appeal to perfect a jurisdictional appeal to the Supreme Court of Ohio shall be filed within 45 days from the entry of judgment being appealed).

Thus, under 28 U.S.C. § 224(d)(1)(A), Hudson's conviction became final and the AEDPA statute of limitations began to run when Hudson's appellate filing deadline expired, i.e., January 23, 2014, or 45 days after the Seventh District Court of Appeals affirmed Hudson's conviction and sentence.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012) (For petitioners not seeking review in the Supreme Court, "the judgment becomes final . . . when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.").  Thus, the one-year AEDPA statute of limitation started to run on January 24, 2014, and expired one year later on January 24, 2015.

Hudson filed his federal habeas Petition with this Court on February 14, 2017, well beyond the expiration of the AEDPA one-year statute of limitation.  Accordingly, absent tolling, Hudson's Petition is barred by the one-year statute of limitations under § 2244(d)(1)(A).

*Statutory tolling principles*

Under statutory tolling, the statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v. Burt,* 337 F.3d 638, 640 (6th Cir. 2003).  This statutory tolling provision, however, does not

---

[8] Hudson has not argued for an alternative start date for the running of the statute of limitations.

"revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

Between January 24, 2014, and January 24, 2015, Hudson filed no petitions for post-conviction relief. Accordingly, statutory tolling does not apply.

### *Equitable tolling principles*

AEDPA's statute of limitations is subject to equitable tolling under certain circumstances. *Hall v. Warden, Lebanon Corr. Inst*., 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)). Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 Fed. Appx. 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). There are two forms of equitable tolling: (1) *traditional* equitable tolling; and (2) *actual innocence* equitable tolling. As discussed below, a petitioner, by satisfying the *Holland* two-part test, may be entitled to traditional equitable tolling. Additionally, a petitioner may be entitled to actual innocence equitable tolling. However, for the reasons set forth below, Hudson is entitled to neither form of equitable tolling.

### *Hudson is not entitled to traditional equitable tolling*

A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently[;]" <u>and</u> (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. Equitable tolling is "applied sparingly" and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of

persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

Hudson argues that he is entitled to equitable tolling because he exercised due diligence in attempting to argue his case but he was prevented from timely pursuing his appellate rights due to attorney error. Doc. 12-1, pp. 2-3. He asserts that he did not learn until May of 2015 that Attorney Deloach had failed to timely file a notice of appeal with the Supreme Court of Ohio. Doc. 12-1, p. 2; *see also* Doc. 9-1, p. 191 (In his motion for delayed appeal filed in the Supreme Court of Ohio, Hudson states "It was not until I received a letter from the clerk's office, of the Supreme Court of Ohio, dated May 15, 2015, that I realized that she had not filed the Notice of Appeal, nor had she filed the App. R. 26(B)."). After learning of Attorney Deloach's failure to act in a timely manner, Hudson asserts that he proceeded to file an action against Attorney Deloach and wrote to the Ohio Public Defender's Office and that that office provided him a list of attorneys that he could contact. Doc. 12-1, p. 2. Per Hudson, no attorneys responded to his request to represent him in filing an App. R. 26(B) application or notice of appeal with the Supreme Court of Ohio. *Id.* In late September or early October 2015, Hudson claims that he received a *pro se* packet from the Ohio Public Defender's Office and then proceeded to perform research and, in November 2015, he filed a delayed application for reopening his appeal. *Id.* More than a year after learning that Attorney Deloach had not filed an appeal with the Supreme Court of Ohio, on June 17, 2016, Hudson filed a motion for delayed appeal with the Supreme Court of Ohio. *Id.*

Thus, Hudson seeks to excuse his untimely filing of his habeas petition due to attorney error occurring in connection with a discretionary appeal with the Supreme Court of Ohio and/or an App. R. 26(B) application. However, "[t]here can be a constitutional claim of ineffective

assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). And it is clear that "a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction . . . ." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) and *Ross v. Moffitt*, 417 U.S. 600 (1974)); *see also Garrett*, 2007 WL 315093, * 5; *see also Espinal v. Warden, Noble Corr. Inst.*, 2007 WL 1288175, * 10 (S.D. Ohio May 1, 2007). Further, "a Rule 26(B) application to reopen is a collateral matter rather than part of direct review. As such, there is no federal constitutional right to assistance of counsel at that stage." *See also Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005) (citing *Finley*, 481 U.S. at 555) (internal footnote omitted).

Furthermore, although Hudson acknowledges learning in May of 2015 that his appellate counsel failed to take action in pursuit of his appeal, Hudson waited until November 24, 2015 to file a delayed application for reopening his appeal. Doc. 9-1, p. 241. Moreover, he waited even longer, i.e., until June 17, 2016, a full year after learning that his appellate counsel had failed to file a notice of appeal with the Supreme Court of Ohio, to file a motion for delayed appeal with the Supreme Court of Ohio. Doc. 9-1, p. 190. And then, and after the Supreme Court of Ohio denied his motion for delayed appeal on August 31, 2016,[9] (Doc. 9-1, p. 240), and knowing that he had failed to timely pursue an appeal in the state courts, Hudson waited another five and a half months, or until February 14, 2017, before filing his federal habeas petition.

In *Sands v. Clipper*, a court within this court district was faced with and rejected an argument similar to that presented by Hudson. 2015 WL 1538829, ** 6-7 (N.D. Ohio Apr. 7,

---

[9] The court of appeals denied Hudson's application for reopening two months earlier on June 29, 2016. Doc. 9-1, p. 246.

2015).  Considering the foregoing, the undersigned, like the court in *Sands*, finds Hudson's claim of entitlement to equitable tolling unpersuasive.  *See Sands*, 2015 WL 1538829, ** 6-7 (when considering whether a petitioner was entitled to equitable tolling of the AEDPA statute of limitations, the court considered a claim of ineffective assistance of appellate counsel but found the claim unavailing, noting "it is well settled that there is no right to counsel for an appeal to the Ohio Supreme Court" and the claimant could not show that the alleged "ineffective assistance of his Ohio counsel in not timely filing an appeal to the Ohio Supreme Court also somehow excuse[d] any subsequent failures and defaults in bringing a timely federal habeas action.").

Even if Hudson could demonstrate that the alleged ineffective assistance of counsel was an "extraordinary circumstance [that] stood in his way and prevented timely filing," Hudson cannot satisfy the first prong of the two-part *Holland* test, namely,  that "he has been pursuing his rights diligently[.]" *Holland*, 560 U.S. at 649.  Accordingly, traditional equitable tolling is not warranted.

### Hudson is not entitled to actual innocence equitable tolling

In addition to equitable tolling under the traditional two-part test outlined above, "a petitioner may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012).  "A valid claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)) (emphasis supplied).  "The evidence must demonstrate factual innocence, not mere legal insufficiency."  *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  The Supreme Court has underscored the fact that

18

"the miscarriage of justice exception . . . applies to a *severely confined category*: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schlup*, 513 U.S. at 329) (emphasis supplied).

Hudson's main argument throughout his filings his that he did not agree to a waiver of his speedy trial rights.  Hudson, however, has not argued or demonstrated actual innocence. Accordingly, the undersigned finds no basis for concluding that Hudson should be entitled to tolling of the statute of limitations based on a claim of actual innocence.

**D.      Hudson's Motion for Appointment of Expert Assistance is DENIED**

On August 10, 2017, Hudson filed a motion for appointment of expert assistance requesting that the Court grant him funds to pay the costs and fees associated with a handwriting expert.  Doc. 11.  Hudson contends that a handwriting expert is necessary in order to support his claim that he did not sign the speedy trial waiver that was accepted and relied upon by the trial court.  Doc. 11, Doc. 11-1.  In light of the undersigned's recommendation that the Court dismiss Hudson's federal habeas petition as barred by the statute of limitations, Hudson's motion for appointment of expert assistance (Doc. 11) is **DENIED**.

## IV.    Conclusion and Recommendation

For the reasons set forth above, the undersigned **DENIES** Hudson's Motion for

Appointment of Expert Assistance (Doc. 11) and the undersigned **recommends** that the Court

**DISMISS** Hudson's Petition (Doc. 1, Doc. 4) as barred by the statute of limitations.[10]


October 6, 2017

Kathleen B. Burke
United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[10] Since Hudson's Petition is time barred, Respondent's alternative arguments, i.e., that Hudson's grounds for relief
are procedurally defaulted and/or without merit, need not be addressed.