# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Charles Hudson,                        Case No. 4:17CV00321

       Petitioner,

v.                                        ORDER

Kimberly Clipper, Warden,

       Respondent.

       This is a habeas corpus case pursuant to 28 U.S.C. § 2254. Following referral to her docket, United States Magistrate Judge Kathleen B. Burke filed a Report and Recommendation (R&R) recommending that I deny the petition. (Doc. 14). She likewise denied petitioner's motion for appointment of an expert. (*Id.* at 1369-70).

       Pending is petitioner's non-specific objection to the R&R. (Doc. 15). As respondent points out (Doc. 16, ID 1374), I may adopt the R&R on the grounds that petitioner has filed a general objection, rather than specifying the basis for his objection, much less submitting an argument thereon. *See Howard v. Sec. of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection . . . has the same effects as would a failure to object.").

       Nonetheless, I address Judge Burke's legal analysis and conclusion as if the petitioner had perfected his objections to the R&R. Doing so, I find, on the basis of de novo review, that whatever objections the petitioner might have made could not be well taken.

       Accordingly, I adopt Judge Burke's R&R as the order of this court, deny relief and dismiss

the petition. I also decline to issue a Certificate of Appealability, as jurists of reason could not reasonably reach a different result.

**Background**

On October 12, 2009, as "M," a fourteen-year-old child, was walking to school, the petitioner grabbed her, put a knife to her throat, threatened her and forced her into an abandoned house. Petitioner took M upstairs to a second-floor bedroom. Despite M's pleas to leave, the petitioner raped her–keeping the knife within close reach during the attack. When he was done, petitioner left. M kicked the knife away, dressed and ran home.

On arriving home, M was incoherent and in tears. She attempted to tell her brother what happened but could not speak clearly. He called their parents and M was able to explain what happened. After unsuccessfully attempting to find the petitioner in the neighborhood, M's family took her to the police and reported the crime. M then underwent a rape kit and medical examination at the Akron Child Advocacy Center.

Officers went to the abandoned house. There, they found a evidence corroborating M's statement: a kitchen knife, the victim's underwear, and a pair of glasses M reported losing that morning. They observed bodily fluids on the floor. The officers took photos of the scene and recovered the underwear, glasses and the knife. The house burned down two days later.

M later identified petitioner from a photographic lineup; she identified him again at trial, reiterating with certainty that he was her assailant. DNA deposited during the rape also matched the petitioner's DNA. Petitioner acknowledged the genetic match but insisted M had consented to the encounter, even though the knife and evidence of blunt force trauma to M's genital area suggested otherwise.

A Mahoning County grand jury indicted petitioner on charges of rape, kidnaping and gross sexual imposition in November, 2009. His trial did not begin until February 28, 2011.

In the interim, the petitioner requested multiple continuances and discharged two attorneys.

On December 11, 2009, petitioner's first attorney submitted a signed waiver of petitioner's right to a speedy trial. While the record confirms that petitioner was present in the courtroom when his attorney submitted the waiver, petitioner has subsequently argued that he was not there, and that his signature was a forgery.

Petitioner discharged his first lawyer in July, 2010, and the court granted defense counsel's motion to withdraw. The court appointed petitioner a new attorney in August, 2010, but this second attorney also withdrew within a month of his appointment. In September 2010, the court noted that petitioner had retained new counsel. At that point, trial was scheduled for November 8, 2010.

In October 2010, petitioner's third attorney moved to dismiss the indictment, alleging a violation of petitioner's speedy trial rights. Petitioner claimed, contrary to what was reflected in the record, that he was not present in court when his counsel filed a waiver of his speedy trial rights and did not sign the speedy trial waiver. The court held a hearing on the motion and overruled it.

On November 3, 2010, the court received a letter from petitioner dated April 15, 2010. In it, petitioner objected to the speedy trial waiver and demanded a trial within a reasonable time. The court held a pretrial hearing that same day, and the parties agreed to reschedule trial for February 28, 2011–the earliest date available to the court and the parties.[1]

---

[1] Between November 2010, and February 2011, petitioner filed a motion to suppress witness identification testimony and a motion to suppress oral statements. The court held hearings on both motions, and granted defense counsel's motion to continue the date of the hearing on the latter motion. Simply put, the Mahoning County Court of Common Pleas was not lax in advancing petitioner's case to trial.

The trial began as scheduled on February 28, 2011. Three days later, disbelieving the petitioner's consent defense, the jury convicted him of rape, two counts of kidnaping, and gross sexual imposition. The state court sentenced him to 21½ years' imprisonment.

**Post-Conviction Proceedings**

On appeal, petitioner's counsel asserted four assignments of error: (1) that the trial court denied his right to a speedy trial; (2) that the court erred in computing his sentence, as rape, gross sexual imposition and kidnaping are allied offenses of similar import that should have been merged; (3) that the court erred in failing to suppress the results of an unduly suggestive photo array; and (4) that his convictions for rape, gross sexual imposition and kidnaping were against the manifest weight of the evidence.

On December 9, 2013, the appellate court affirmed petitioner's conviction and sentence. Petitioner's attorney informed him of the decision on January 10, 2014. The petitioner did not file a motion for review in the Ohio Supreme Court.

Petitioner's brother then retained new counsel. That attorney informed petitioner that on January 24, 2014, she had filed a notice of appeal with the Ohio Supreme Court.

On May 15, 2015, following petitioner's inquiry as to the status of his appeal, the Clerk of the Ohio Supreme Court informed petitioner that no such appeal had been filed. (That court had, in the interim, suspended the attorney petitioner's brother had hired from the practice of law).

Six months later, on November 24, 2015, petitioner, acting *pro se*, filed a delayed application for reopening pursuant to Ohio App. R. 26(B) in the Ohio Court of Appeals. Another seven months after that (and more than thirteen months total after learning his attorney failed to seek review in Ohio's highest court), petitioner filed a *pro se* motion for delayed appeal in the Ohio Supreme Court

on June 17, 2016.

To excuse the untimeliness of both motions, petitioner explained that his retained attorney failed to file a motion for review with the Ohio Supreme Court as promised. Finding such explanation unpersuasive, both courts refused to consider his motions–the Ohio Court of Appeals on June 29, 2016, and the Ohio Supreme Court on August 31, 2016.

Six months later, on February 14, 2017, petitioner filed the instant habeas corpus petition.[2]

## Discussion

### A. Magistrate Judge Burke's Decision

The one-year limitations period for filing a writ of habeas corpus under the Antiterroism and Effective Death Penalty Act (AEDPA), begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 224(d)(1)(A).

For petitioner, that date was January 23, 2014–45 days after the Ohio Court of Appeals' December 9, 2013, decision overruling his assignments of error and affirming the trial court's judgment. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *see also* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i). Petitioner did not file his habeas corpus petition until February 14, 2017, more than two years after the statute ran.

Considering the lengthy delay, Judge Burke found: (1) that petitioner failed to exercise due diligence in seeking further state court review; and (2) that no extraordinary circumstance–including "attorney error . . . in connection with a discretionary appeal with the Supreme Court of Ohio and/or

---

[2]As noted in the R&R, although the court docketed the petition on February 16, 2017, petitioner placed it in the "prison mailing system" two days earlier, making February 14, 2017 the date of filing under the mailbox rule. (Doc. 14, ID 1360).

5

an App. R. 26(B) application"–prevented him from making a timely filing. (Doc. 14, ID 1366-68). She therefore concluded that petitioner was not entitled to equitable tolling of the AEDPA limitations period.[3]

I agree.

### B. The Merits

Nonetheless, I turn briefly to the putative merits of the petition, in which petitioner again asserts four grounds for relief: (1) denial of his constitutional right to a speedy trial; (2) the trial court's acceptance of a fraudulent (i.e., forged) wavier of his speedy trial rights; (3) the trial court's failure to hold a hearing on petitioner's claim that the waiver was forged; and (4) his attorney's ineffective assistance in failing to file a motion for delayed review in the Ohio Supreme Court.[4]

Petitioner's speedy trial waiver, if valid, forecloses the first three claims. And again, the record shows that he was present when his attorney submitted the wavier. (Doc. 9-1, ID 127-28). That fact establishes the presumptive validity of his signature on the form. Petitioner's bald, unsupported assertions of forgery do not rebut this presumption.

In any event, and more significantly, even if petitioner had established that the waiver was invalid, he has failed to show that his constitutional right to a speedy trial was violated.

To determine whether a defendant has been denied his right to a speedy trial, the Supreme Court instructs me to consider four factors: (1) the length of the delay; (2) the reason for the delay;

---

[3]Petitioner, furthermore, "has not argued or demonstrated actual innocence," and therefore cannot claim actual innocence equitable tolling. (Doc. 14, ID 1369).

[4]I note that Judge Burke understood petitioner's ineffective assistance claim to be directed at his initial counsel, the one who secured the allegedly fraudulent waiver, not the one who misrepresented the status of petitioner's appeal. A claim ineffective assistance against this attorney would fail for the same reasons discussed *infra*.

(3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In this case, none of them favor petitioner.

First, the state tried petitioner on February 28, 2011, roughly seventeen months after his October 12, 2009 arrest; even without considering the delays attributable to him, this amount of time is not extraordinary. *See e.g., United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007) ("[N]either a ten- nor a twenty-month delay is extraordinary under our precedents."). Second, much of the delay was in fact attributable to petitioner, who cycled through several attorneys and, as Judge Burke noted, requested a number of continuances. (Doc. 14, ID 1354-55).

Third, petitioner did not properly assert his right to a speedy trial or withdraw the waiver until November 3, 2010. When he did, the court addressed the matter at a prescheduled hearing that same day. Petitioner's third attorney agreed at the hearing to continue the trial date to February 28, 2011–the earliest date on which he, the court, and the prosecution were available. As the Ohio Court of Appeals found, the state's prompt response to petitioner's demand satisfied its duty to "bring the accused to trial within a reasonable time." *State v. Hudson*, 2013-Ohio-5529, ¶ 25, 2013 WL 6672424, *7 (Ohio App.).

Fourth, and perhaps most importantly, petitioner has not shown how the delay, even if excessive and unwarranted, prejudiced him at trial. Generally, the "most serious" consideration for the prejudice factor is "the possibility that the defense will be impaired" by the delay, which can "skew[] the fairness of the entire system." *Barker*, 407 U.S. at 532.

But petitioner was not at all hindered in making his case for acquittal. He admitted his acts, but claimed M consented to them. At bottom then, the verdict hinged on whether the jury believed the petitioner or the victim. And this was no "he said/she said" contest.

7

Aside from the unlikelihood that a fourteen-year-old girl might leave a "consensual" encounter in a distraught, incoherent state, there was a significant piece of evidence that substantially corroborated M's account and undermined the petitioner's: the knife officers found at the abandoned house.

In the same vein, petitioner points to no evidence he lost as a result of the delay. While his day in court may not have come as promptly as he desired, what happened later was no different than what might have happened earlier. Thus, even assuming that he did not sign the waiver, and that the trial court should have had a hearing to determine that fact,[5] and that the court would have deemed the waiver fraudulent, there is no reason to believe the outcome would have differed.

As for the ineffective assistance claim, the attorney petitioner's brother retained clearly committed malpractice when she falsely told petitioner she had submitted a motion for delayed review in the Ohio Supreme Court. But her conduct does not give rise to a claim for ineffective assistance of counsel, because "the right to appointed counsel extends [only] to the first appeal of right, and no further." *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1982). What is more, "a Rule 26(B) application to reopen is a collateral matter rather than part of direct review. As such, there is no federal constitutional right to assistance of counsel at that stage." *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005) (en banc, footnote omitted).

I note, moreover, that even if petitioner had a constitutional right to effective assistance of counsel, he has not shown that his attorney's malpractice caused any prejudice. He has not shown that the Ohio Supreme Court would have granted an untimely motion for review, much lass that, if

---

[5]Although the court did not hold a hearing to determine the validity of the waiver, it did hold a hearing on petitioner's motion to dismiss the charges for alleged violation of his speedy trial rights.

8

it had, it would have reversed the petitioner's convictions.

**Conclusion**

Judge Burke's R&R is well taken in all respects. Understandably, she did not reach the foreclosed merits of the petition. I have done so simply to underscore the fact that under no circumstance is the petitioner entitled to relief.

It is, therefore,

ORDERED THAT:

1. The petitioner's objection to the Magistrate Judge's Report and Recommendation (Doc. 15) be, and the same hereby is, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 14) be, and the same hereby is, adopted as the order of this court;

3. The petition for a writ of habeas corpus (Doc. 1) be, and the same hereby is, denied; and

4. No Certificate of Appealability shall issue.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge